IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Tracy J. Douglas, | ) | C/A No. 1:12-2882-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Aiken Regional Medical Center, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Tracy J. Douglas, filed this employment case pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; and 42 U.S.C. § 1981 against her former employer, Aiken Regional Medical Center ("the Hospital"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 37.) Douglas filed a response in opposition (ECF No. 44), and the defendant replied (ECF No. 46). Also pending before the court is Douglas's motion to strike. (ECF No. 45.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are viewed in the light most favorable to Douglas, to the extent they find support in the record. Douglas is a former Radiologist Staffing Coordinator who worked for the Hospital from May 2004 until her employment was terminated in August 2011. Throughout her employment, Douglas experienced unwelcome sexual attention from one of her supervisors, Lisa Davis. Douglas complained to the Hospital's Human Resources

Department in 2005 after Davis made a lewd comment and sexual advance toward Douglas. After hearing her complaint, the Hospital offered to remove Douglas from Davis's direct supervision and prohibit Davis from meeting with Douglas alone. This proposed remedy satisfied Douglas; however, the alleged harassment continued. Douglas then complained to one of her supervisors, Brent Slack. Douglas also complained about Davis's advances toward her to one of the doctors, who is not a hospital employee, and a co-worker. She did not, however, file any complaint with the Hospital's Human Resources Department pursuant to the Hospital's written policies regarding sexual harassment.

In August 2011, Douglas accessed, at her then-boyfriend's request, the Hospital's record keeping system to view medical records of a patient, Tammy Fields, who was Douglas's boyfriend's ex-wife. Douglas went to visit Fields in her hospital room, accompanied by one of Douglas's co-workers. Although the record diverges as to the genesis and precise nature of the complaint, ultimately the parties agree that Fields complained to Kristen Medlin, Administrative Director of Human Resources, about her medical records having been improperly accessed while she was a patient at the Hospital. Eric Muhlbairer, the Hospital's Patient Advocate, asked Davis to investigate. Davis requested that Scott Ansede, the Hospital's HIPAA Compliance Officer, run a report to show whether Fields's patient records were accessed. The report showed that Douglas had accessed Fields's patient records nineteen times on August 19 and 21, 2011. It showed that Douglas reviewed Fields's laboratory test results and patient notes. Davis consulted with the Hospital's Medical Director, who could not suggest a medical reason why Douglas would have needed to access a patient's records after she was discharged.



Davis presented the results of this investigation, which also included a telephone interview with Fields, to Ansede and Medlin. Medlin determined that termination was warranted for Douglas's violation of HIPAA and the Hospital's confidentiality policy.

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party.



Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Direct Evidence and Burden-Shifting Framework**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof.  First, she may establish her claims through direct evidence of the alleged discrimination.  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*).  Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)).  "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.' "  Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).

Alternatively, when direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.  Merritt v. Old Dominion Freight, 601 F.3d 289,



294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is



appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Douglas's Claims**

    **1.     Race-Based Claims**

As an initial matter, the Hospital correctly argues that Douglas appears to have abandoned any race-based claim. (See Def.'s Reply Mem. Supp. Mot. Summ. J. at 11, ECF No. 46 at 11) (citing Eady v. Veolia Transp. Servs., 609 F. Supp. 2d 540, 560-61 (D.S.C. 2009) ("The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action.")).

    **2.     Sexual Harassment[1]**

Douglas raises two types of sexual harassment claims in this action: a hostile work environment claim, and a cause of action commonly referred to as a "*quid pro quo*" claim.

Sexual harassment claims based on a hostile work environment, involving severe and pervasive conduct that does not result in a tangible employment action, are distinguished from those

---

[1] The Hospital contends that Douglas's sexual harassment claims are untimely; however, the court finds that they may be considered under National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002). See id. at 117-18 (discussing the continuing violation theory and stating that "[g]iven . . . that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment").



that do result in a tangible employment action such as termination.  See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761-63 (1998).  The latter type of sexual harassment claims have been referred to in the case law as "*quid pro quo*" claims,[2] because they typically involve the circumstance where a supervisor takes a tangible employment action against a subordinate for resisting the supervisor's sexual advances.  Id. at 752.

The United States Supreme Court's landmark decisions in Ellerth and Faragher[3] establish that, under Title VII, employers are vicariously liable for harassment by supervisors of their subordinates.  When the harassing supervisor actually imposes a tangible employment action (a "*quid pro quo*" claim), the employer's liability is automatic.  However, when no tangible employment action has been imposed by the harassing supervisor (hostile work environment), an affirmative defense is available.  Specifically, an employer can avoid liability for a supervisor's harassment of a subordinate that does not result in a tangible employment action if it shows:  (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities it provided. 1 Barbara T. Lindemann et al., Employment Discrimination Law 20-15 (5th ed. 2012) (citing Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765).

---

[2] As noted by prominent commentators, the concept of "*quid pro quo*" claims has been replaced by the Supreme Court's focus on whether the harassment resulted in a tangible employment action.  See 1 Barbara T. Lindemann et al., Employment Discrimination Law 20-15 (5th ed. 2012).

[3] Faragher v. Boca Raton, 524 U.S. 775 (1998).



It appears that the Hospital has established an unrefuted affirmative defense with regard to Douglas's hostile work environment claim.[4]  First, it is undisputed that the Hospital maintains an anti-harassment policy that was disseminated to employees, who received training about it.  See Brown v. Perry, 184 F.3d 388, 396 (4th Cir. 1999) (holding that the existence of such a policy generally militates strongly in favor of the conclusion that the employer exercised reasonable care to prevent and promptly correct harassment).  Second, Douglas admits that she did not utilize the Hospital's available procedures pursuant to that policy to report sexual harassment by Davis.  (Douglas Dep. at 50-52, ECF No. 37-5 at 20-22.)  Accordingly, the Hospital is entitled to summary judgment on Douglas's hostile work environment claim.

### 3.     Claims Based on Termination

The rest of Douglas's claims fail on the merits as a matter of law.  The premise of all of Douglas's claims stemming from her termination—whether styled as disparate treatment, *quid pro quo* sexual harassment,[5] or retaliation—is that Davis, her alleged harasser, set her up to be fired by causing Fields to make a complaint about Douglas.[6]  Even assuming Davis acted with an unlawful motive, however, and even assuming that Davis's alleged actions caused Douglas's termination, Douglas's claims fail in light of her admission that she in fact violated HIPAA and the Hospital's

---

[4] Douglas's *quid pro quo* claim is addressed in the discussion below along with her other claims stemming from her termination.

[5] The McDonnell Douglas burden shifting scheme applies to *quid pro quo* claims of sexual harassment.  See Okoli v. City of Baltimore, 648 F.3d 216, 222-23 (4th Cir. 2011).

[6] In light of the court's conclusion that Douglas's claims fail as a matter of law even considering Fields's declaration, the court need not address the procedural and evidentiary issues raised by the Hospital's motion to strike it.  Accordingly, that motion is terminated from the docket as moot.



confidentiality policy. (Douglas Dep. at 77, 142, 147, ECF No. 37-5 at 42, 68, 72.) The United States Court of Appeals for the Fourth Circuit has addressed almost this very situation in an *en banc* decision and determined that an employee is not insulated from the consequences of her own misconduct even if the decision maker would not have known of her misdeeds in the absence of a co-worker's discriminatory or retaliatory animus in reporting it. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 296 (4th Cir. 2004). The Court stated:

> Nor would it be appropriate to withhold summary judgment from an employer who has terminated an employee for rules violations, and wholly in the absence of any discriminatory motivation on the part of the decisionmakers, simply because the violations might not have been known in the absence of a subordinate's discriminatory animus that brought the infractions to light. Otherwise, an unbiased employer could never discipline or terminate an employee for an undisputed violation of company rules, including such egregious acts as fighting or stealing (or endangering the lives of those who fly on aircraft carelessly attended by a mechanic), so long as the employee could demonstrate that she was "turned in" by a subordinate employee "because of" a discriminatory motivation.

Id. at 296. Thus, because Douglas cannot show that the decision makers' stated reason for terminating her—violation of HIPAA and hospital policy—was pretextual, her claims fail.

### RECOMMENDATION

For all of the foregoing reasons, the court recommends that the Hospital's motion for summary judgment (ECF No. 37) be granted.

                                                                                      */s/ Paige J. Gossett*
                                                                                      Paige J. Gossett
                                                                                      UNITED STATES MAGISTRATE JUDGE

December 9, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Robin L. Blume, Clerk
>United States District Court
>901 Richland Street
>Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).