# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Tracy J. Douglas, ) | Civil Action No. 1:12-cv-02882-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Aiken Regional Medical Center, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Tracy J. Douglas ("Plaintiff") filed this action against her former employer, Defendant Aiken Regional Medical Center ("Defendant"), alleging that she was subjected to (1) a hostile work environment because of her sex, (2) retaliation for complaining about sexual harassment, (3) quid pro quo sexual harassment, and (4) race discrimination, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. (ECF No. 1 at 5–6.) Plaintiff also alleges race discrimination in violation of 42 U.S.C. § 1981 ("§ 1981"). (Id. at 6.)

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56 motion"). (ECF No. 37.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On December 9, 2014, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's Rule 56 motion as to all Plaintiff's claims. (ECF No. 52.) Plaintiff filed objections to the Magistrate Judge's Report and Recommendation, which objections are presently before the court. (ECF No. 56.) For the reasons set forth below, the court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's recommendation and **GRANTS IN PART AND DENIES IN**

**PART** Defendant's Rule 56 motion. The court grants the Rule 56 motion as to Plaintiff's claims alleging retaliation for complaining about sexual harassment and race discrimination. The court denies the Rule 56 motion as to Plaintiff's claim for a hostile work environment because of her sex and quid pro quo sexual harassment.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

The facts of this matter are discussed in the Report and Recommendation. (See ECF No. 52.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of her claims.

Defendant hired Plaintiff as a full-time Radiologist Staffing Coordinator on May 16, 2004. (ECF No 37-5 at 4: 5–7.) At the time she began her employment, Plaintiff received Defendant's Employee Handbook and workplace policies and procedures, including Defendant's Equal Employment Opportunity Non-Discrimination Policy, Sexual Harassment Policy, Employee Complaint Procedure Regarding Harassment and Confidentiality Policy, and patient confidentiality as it relates to the Health Insurance Portability and Accountability Act ("HIPAA"). (Id. at 56:12–58:9; see also ECF No. 37-6 at 16–39.) Throughout her employment, Plaintiff received follow-up training on these various policies and procedures. (See, e.g., ECF No. 37-5 at 55:13–16 & 63:3–15.)

In August 2004, Defendant hired Lisa Davis ("Davis) as its Director of Radiology. (ECF No. 37-7 at 4:9–25.) During Plaintiff's employment, Davis conducted most of Plaintiff's performance evaluations and approved each merit increase Plaintiff received. (ECF No. 37-5 at 64:9–14 & 65:21–66:4.)

Starting in January 2005, Plaintiff alleges she was subject to unwelcome sexual harassment from Davis. Specifically, Plaintiff alleges that on January 14, 2005, Davis told her that "[w]hen I tell a bitch to eat my pussy, that's what she does. Do you understand?" (Id. at 7:14–20; see also ECF No. 37-6 at 65.) In response to Davis's alleged act, Plaintiff complained as follows in a written statement to the Defendant's Human Resources Department:

> During a Friday after work gathering that included both hospital and non hospital personnel, several unsolicited off color remarks were made by Lisa to me. These comments were of a sexual nature. They were heard by others present at the table and embarrassed me and made me feel very uncomfortable. Donna [Culver] was present and I told her how I felt and how I was concerned about Lisa [Davis]'s aggressive behavior.
>
> That following Monday at work I felt very uncomfortable. Lisa took me into her office and said that what was said outside of work stays outside of work. She informed me that what was said in her office stays in her office. She informed me that she could not trust me because I was saying things about her and the other night. She went on to say that she was giving me one more chance because she could not work with someone she couldn't trust.
>
> From that day on I feel that I have been alienated from the team and have been left out of the loop. I am an integral part of the radiology group and need to know about procedural and interoffice goings on, which many times I only find out about stuff after something goes wrong.
>
> Lisa [Davis] continues to use inappropriate language directed at me when she is upset. She points her finger in my face and has a very intimidating posture when we are alone in her office.

(ECF No. 37-6 at 65.) After hearing Plaintiff's complaint, Defendant offered to remove Plaintiff from Davis's direct supervision and prohibit Davis from meeting with Plaintiff alone, which offer Plaintiff accepted. (ECF No. 37-5 at 14:3–15:5.) However, the alleged harassment continued. (See ECF No. 1 at 3 ¶ 8 ("This harassment consistent of unwanted touching, touching of a sexual nature including attempts to kiss plaintiff, slapping plaintiff on her posturer, touching Plaintiff's breasts and making inappropriate comments to Plaintiff of a sexual nature.").) Despite the continued harassment, Plaintiff did not file any additional complaints with Defendant's

Human Resources Department regarding Davis's alleged sexual harassment.[1] (ECF No. 37-5 at 19:1–23:17.) Plaintiff's last identified (and unreported) incident of harassment occurred in May 2011 when she was a patient at Defendant's hospital facility. Davis allegedly came to visit Plaintiff and kissed her on the lips in front of Plaintiff's boyfriend, who Plaintiff had to stop from confronting Davis. (Id. at 82:24–84:12.)

On August 19 and 22, 2011, Plaintiff used Defendant's records system to access the information of Tammy Fields ("Fields"), a female patient at Defendant's facility who was the ex-wife of Plaintiff's boyfriend. (ECF No. 37-8 at 16:23–17:4.) Plaintiff also visited Fields' hospital room (ECF No 37-5 at 43:24–25), which resulted in Fields contacting Defendant, complaining to Defendant's Administrative Director of Human Resources, Kristen Medlin ("Medlin"), and requesting that Defendant look into whether her medical records were improperly accessed.[2] (ECF No. 37-8 at 12:10–25.) Medlin communicated Fields' request to Defendant's Patient Advocate, Eric Muhlbairer, who asked Davis to investigate. (Id. at 13:16–24; see also ECF No. 37-7 at 6:23–8:17.) Davis then requested that Scott Ansede, Defendant's HIPAA Compliance Officer, run a report to show whether Fields' patient records were accessed. (ECF No. 37-2 at 2 ¶¶ 2, 5.) The report confirmed that Plaintiff had accessed Fields' patient records on August 19 and 22, 2011. (Id. at ¶ 5; see also ECF No. 37-8 at 16:1–17:4.) The report further showed that Plaintiff reviewed Fields' laboratory test results and patient notes. (ECF No. 37-8 at 16:5–21.) On August 30, 2011, Plaintiff was terminated for violating HIPAA and

---

[1] However, Plaintiff testified that she complained about Davis's alleged sexual harassment to several colleagues and doctors, including Cynthia Cooks, Defendant's Radiology Coordinator. (ECF No. 37-5 at 25:25–27:25.) Cooks testified that she witnessed Lisa Davis hug or kiss Plaintiff four (4) times, but did not think this was unusual. (ECF No. 44-5 at 11 (33:16–34:17).)

[2] Fields stated in an affidavit that she received a call from an individual claiming to be employed by Defendant in its hospital security service. (ECF No. 44-1 at 2 ¶ 3.) The individual told Fields that her "confidential medical information had been improperly accessed and . . . [her] rights to patient confidentiality had been violated. (Id.)

4

Defendant's confidentiality policy. (ECF Nos. 37-6 at 11 & 37-8 at 6:14–20.)

On December 12, 2011, Plaintiff filed a Charge of Discrimination (the "Charge") with the United States Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC"). (ECF No. 37-6 at 11.) In the Charge, Plaintiff alleged that she was discriminated against because of her sex and retaliated against for complaining about sex and race discrimination in violation of Title VII. (Id.) In the Charge, Plaintiff stated the following particulars:

> I began my employment with Aiken [R]egional Medical Center as a Radiologist Assistant in May 2005. While employed, I was sexually harassed by Lisa Davis, Director of Radiology. Lisa has kissed me on the lips and on separate occasions, she slapped me on the buttocks and touched my breast. I have reported the behavior to Human Resources and Lisa Davis has retaliated against me by yelling, cursing and pointing her finger in my face. I have also complained that Lisa has made racially derogatory remarks about African American employees and has refused to hire qualified African Americans for positions in the department. On August 30, 2011, I was discharged.
>
> When I made complaints about the sexual harassment, I was told by management and Human Resources to try and overlook behavior. I had no choice but to overlook the behavior because I am a single parent and needed my job. The reason given for the discharge was for violating the HIPPA Privacy Act. However, other employees have also violated HIPPA and were not terminated.

(Id.)

After receiving notice of the right to sue from the EEOC as to the Charge, Plaintiff filed an action on October 5, 2012, in this court alleging claims for (1) a hostile work environment on account of sex and retaliation for complaining about sexual harassment (Count 1), quid pro quo sexual harassment (Count 2), and race discrimination (Count 3). (ECF No. 1 at 5–6.) Defendant answered the Complaint on January 25, 2013, denying its allegations. (ECF No. 6.) On April 15, 2014, Defendant filed its Rule 56 motion. (ECF No. 37.) Plaintiff filed opposition to the Rule 56 motion on May 20, 2014, to which Defendant filed a reply in support of summary judgment on May 30, 2014. (ECF Nos. 44, 46.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge issued her Report and Recommendation on December 9, 2014, recommending that Defendant's Rule 56 motion be granted as to all Plaintiff's claims. (ECF No. 52.) On January 5, 2015, Plaintiff filed Objections to the Magistrate's Report and Recommendation. (ECF No. 56.) Defendant filed a Reply to Plaintiff's Objections to Report and Recommendation on January 23, 2015, to which Plaintiff filed a Reply to Defendant's Response on February 2, 2015. (ECF Nos. 58, 61.)

## II.     LEGAL STANDARD

A.     The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections[3] are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

B.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine

---

[3] An objection is specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." One Parcel of Real Prop. Known As 2121 E. 30th St., 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

### III.    ANALYSIS

A.    The Report and Recommendation

In the Report and Recommendation, the Magistrate Judge initially observed that Plaintiff

appeared to abandon her race-based claims.  (ECF No. 52 at 6.)  The Magistrate Judge next recommended granting the Rule 56 motion as to Plaintiff's hostile work environment claim because Defendant maintained an anti-harassment policy that it provided to and trained employees on, which policy was not utilized by Plaintiff to report Davis's alleged sexual harassment.  (Id. at 7–8 (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. Boca Raton, 524 U.S. 775, 807 (1998)).)  Finally, the Magistrate Judge recommended that Defendant was entitled to summary judgment on Plaintiff's remaining claims for "disparate treatment, quid pro quo sexual harassment, [and/]or retaliation" because she could not establish Defendant's stated reasons for terminating her – violation of HIPAA and hospital policy – were pretextual.  (Id. at 8–9.)

Based on the foregoing, the Magistrate Judge recommended granting Defendant's Rule 56 motion in its entirety.  (Id. at 9.)

B.   Plaintiff's Objections

In her objections to the Report and Recommendation, Plaintiff first argues that the Magistrate Judge "erroneously concluded that [Defendant] Aiken Regional had exercised reasonable care to prevent and correct harassment and that [Plaintiff] Douglas had not utilized the available procedures pursuant to that policy to report sexual harassment."  (ECF No. 56 at 2.)  In support of this argument, Plaintiff asserts that "to be entitled to the affirmative defense created by the Supreme Court in Ellerth and Faragher, the defendant must establish there is no material issue of fact that it took reasonable care to prevent and correct the harassing behavior."  (Id. at 7.)  In this case, Plaintiff asserts that there is an issue of fact regarding whether Defendant exercised reasonable care to prevent and correct harassment since its response to Plaintiff's initial complaint was ineffective thereby subjecting her to continued "unwanted touching and

8

numerous other acts of harassment [and threats] by Davis." (Id. at 8.)

In her second objection, Plaintiff argues that the Magistrate Judge erroneously found that Plaintiff's termination resulted from the violation of company policy when the policy violated normally "would not have led to her termination." (Id. at 2.) Although she admits to using Defendant's "computer system to find out Fields' room number and that her action violated hospital policy," Plaintiff asserts that her evidence shows that her admitted act would not normally have "led to termination and that many other hospital employees had engaged in the same behavior without any disciplinary action being taken against them." (Id. at 9.) Specifically, Plaintiff asserts that Cynthia Cook's testimony supports her arguments as to this issue. (Id.)

Based on the foregoing, Plaintiff prays that the court deny Defendant's Rule 56 motion. (Id. at 10.)

C.   The Court's Ruling

In light of the foregoing authorities and the parties' respective positions, the court considers each of the claims relevant to Defendant's Rule 56 motion in turn below.

*1. Hostile Work Environment*

In her first cause of action, Plaintiff alleges that she was subjected to a hostile work environment on account of her sex.

Title VII prohibits an employer from subjecting an employee to a hostile work environment. See 42 U.S.C. § 2000e-2(a)(1)[4]; see also Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001). A plaintiff can establish a hostile work environment claim under Title VII

---

[4] "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ." 42 U.S.C. § 2000e-2(a)(1).

9

by either directly showing that discrimination motivated an employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Kasznski v. Thompson, 83 F. App'x 526, 527–28 (4th Cir. 2003). To state a prima facie Title VII claim against an employer for a hostile work environment because of sexual harassment, the plaintiff must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008) (citing Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 331 (4th Cir. 2003)). Pursuant to the burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its employment action. Kasznski, 83 F. App'x at 527–28. If the defendant meets the burden to demonstrate a legitimate, non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

As to the hostile work environment claim based on sex, the court finds that Plaintiff has met her burden of establishing that the alleged unwelcome treatment she received from Davis was because of her sex. Plaintiff has further shown that Davis's conduct from January 2005 until May 2011 was subjectively and objectively severe and pervasive to alter the conditions of

10

employment and create an abusive atmosphere. As to the imputation of liability to Defendant for Davis's harassment, Plaintiff has offered evidence showing that Defendant knew of the harassment starting in January 2005 and failed to respond effectively. Based upon the foregoing, the court finds that Plaintiff has presented sufficient evidence to raise a genuine issue of fact as to whether she was subjected to a hostile work environment based on her sex in violation of Title VII. Moreover, even assuming that Defendant can carry its burden to produce a legitimate, non-discriminatory reason for the conditions of Plaintiff's employment, Plaintiff has offered sufficient evidence of pretext to create a genuine dispute of fact as to whether Plaintiff was subjected to a hostile work environment on account of her sex. Specifically, if the evidence is viewed in the light most favorable to Plaintiff, she can establish pretext in that the reason for her termination was influenced by her alleged harasser, Davis, who Defendant allowed to conduct the investigation into the act that resulted in Plaintiff's termination. See, e.g., Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1565 (11th Cir. 1987) (reversing district court's grant of summary judgment for the employer because an issue of material fact remained as to whether the alleged harasser "influenced" the decision-maker to fire the plaintiff). Therefore, Plaintiff's objection to the Magistrate Judge's Report and Recommendation is sustained. Accordingly, Defendant's Rule 56 motion on Plaintiff's claim for hostile work environment based on her sex is denied.

    *2. Retaliation for Complaining about Sexual Harassment in Violation of Title VII*

In the second part of her first cause of action, Plaintiff alleges that she was retaliated against for "her prior complaints of sexual harassment in violation of Title VII." (ECF No. 1 at 5 ¶ 24.)

Title VII protects individuals from retaliation. See 42 U.S.C. § 2000e-3(a)[5]. In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method. Under the burden-shifting method, to demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show (1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action. Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997); Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir. 2001). If the plaintiff establishes a prima facie case of retaliation, the defendant can rebut the presumption of retaliation by articulating a non-discriminatory reason for its action. Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 271 (4th Cir. 2001) (citation omitted). At that point, the plaintiff has the opportunity to prove that the employer's legitimate, non-discriminatory reason is pretextual. Id.

In the Report and Recommendation, the Magistrate Judge determined that Plaintiff's retaliation claim failed because she could not establish pretext. (ECF No. 52 at 8–9.)

Upon review, the court does not agree with the Magistrate Judge that Plaintiff's claim for retaliation fails because she cannot establish pretext. Instead, the court finds that without direct evidence of retaliatory conduct, Plaintiff's retaliation claim fails because the temporal proximity between her protected conduct and adverse employment action is too attenuated to support the required inference of a causal connection. In this regard, there is a difference of six (6) years and seven (7) months between Plaintiff's protected activity in January 2005, when she complained about Davis's alleged harassment, and an adverse employment action in August 2011, when

---

[5] "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Plaintiff was terminated.  See, e.g., Rease v. Zax, Inc., C/A No. 3:09-3601, 2009 WL 2998977, at *7 (D.S.C. Sept. 17, 2009) ("Rease fails to show a causal connection based on temporal proximity alone because she was terminated (July 27, 2007) more than nine months after her protected conduct (the First Charge on October 12, 2006).") (Citations omitted).  Therefore, the court finds that the temporal proximity of Plaintiff's retaliation claim does not satisfy the causation element of a prima facie case of retaliation.  Accordingly, Defendant is entitled to summary judgment as to Plaintiff's claim for retaliation.

### 3. *Quid Pro Quo Sexual Harassment*

Plaintiff asserts in her second cause of action that she was subjected to quid pro quo sexual harassment for refusing "to accept Davis's requests and as a result was subjected to demeaning and discriminatory treatment by Davis which included Davis'[s] demand that Plaintiff be fired for engaging in the same conduct which Davis herself had engaged in."  (ECF No. 1 at 5 ¶ 26.)

"Quid pro quo liability exists where 'a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands.'"  Johnson v. Donahoe, C/A No. 4:12-cv-00390-RBH, 2014 WL 607704, at *5 (D.S.C. Feb. 18, 2014) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998)).  As with her prior claim for hostile work environment on account of sex, Plaintiff may resort to the McDonnell Douglas burden-shifting framework in the absence of direct evidence of discrimination.  Okoli v. City of Baltimore, 648 F.3d 216, 222–23 (4th Cir. 2011).  "To establish a prima facie case of quid pro quo sexual harassment under Title VII, a plaintiff must satisfy the following elements: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the employee's reaction to the harassment affected

13

tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; that is, the acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment; and (5) the employer knew or should have known of the harassment and took no effective remedial action." Johnson v. Donahoe, C/A No. 4:12-cv-00390-RBH, 2014 WL 607704, at *5 (D.S.C. Feb. 18, 2014) (citing Okoli, 648 F.3d at 222–23).

As discussed above with respect to Plaintiff's hostile work environment claim on account of sex, an issue of fact exists as to whether Plaintiff's termination was a direct result of her refusal of Davis's sexual advances. Plaintiff reported Davis's conduct to Defendant's Human Resources Department and Davis's continued engaging in harassing conduct until at least May 2011. In addition, as Plaintiff's alleged harasser, Davis was allowed to conduct the investigation into Plaintiff's conduct that eventually led to her termination. As such, an issue of fact exists as to Plaintiff's quid pro quo sexual harassment claim and summary judgment is not appropriate.

*4. Race Discrimination in Violation of Title VII and § 1981*

In her third cause of action, Plaintiff asserts that Defendant subjected her to race discrimination by allowing Davis to harass, disparage, and discriminate against African-American employees. (ECF No. 1 at 6 ¶ 29.) Plaintiff did not file an objection to the Magistrate Judge's recommendation to grant summary judgment on the race discrimination claim and specifically stated her lack of opposition. (See ECF No. 56 at 1 n.1 & 8 n.4.) In the absence of an objection, the court is not required to give any explanation for adopting the recommendation of the Magistrate Judge. Camby, 718 F.2d at 199. As a result, the court accepts the Magistrate Judge's recommendation as to Plaintiff's cause of action for race discrimination in violation of Title VII and § 1981 and grants Defendant's Rule 56 motion as to this claim.

## IV.     CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS IN PART AND DENIES IN PART** the Motion for Summary Judgment of Defendant Aiken Regional Medical Center.  (ECF No. 37.)  The court **DENIES** the Motion for Summary Judgment as to Plaintiff's claims for a hostile work environment because of her sex and quid pro quo sexual harassment.  The court **GRANTS** the Motion for Summary Judgment as to Plaintiff's remaining claims for race discrimination and retaliation.  The court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 31, 2015
Columbia, South Carolina